MARY J. ADAMS, APPELLANT, v. ARTEMUS L. ADAMS, RESPONDENT.

*Consideration — when the agreement of a wife to discontinue an action for divorce is a good one — Right of the wife to sue on a note given by her husband, founded on such an agreement.*

The plaintiff having left her husband, the defendant, and brought an action against him to procure a divorce on the ground of his adultery, in which *prima facie* evidence of his guilt had been given, agreed with him to discontinue the action, without costs to either party, and to return to and live with him on condition that he should give his note for $1,000 to her father for her benefit. The note was given, the suit discontinued and the wife returned to and lived with her husband for several years.

In an action brought by her upon the note after she had again separated from her husband:

*Held,* that the note was founded upon a good consideration, and was not void as being against public policy.

That the note having been assigned to the wife, she could bring an action at law upon it, and that, even if she could not maintain an action at law, equitable relief might be afforded to her under a complaint stating the facts.

*Van Order* v. *Van Order* (8 Hun, 315), distinguished.

APPEAL from a judgment, entered on the decision of a justice of this court dismissing the complaint, on a trial at the Jefferson Circuit before the court without a jury.

*Chas. D. Wright* and *Levi H. Brown*, for the appellant.

*Lansing & Rogers*, for the respondent.

SMITH, J.:

This action is upon a promissory note dated 29th January, 1866, for $1,000, payable one-half in five years and the other half in ten years from date, with annual interest after two years, executed and delivered by the defendant to Job Gardner, and by the latter transferred to the plaintiff.

The note was made under the following circumstances: The parties to this action intermarried in February, 1863, and lived together as husband and wife until April, 1865, when the plaintiff left the

defendant and commenced an action against him for divorce on the ground of his adultery. The defendant answered, denying the alleged adultery, and issues were settled to be tried. In October, 1865, a female witness who was examined conditionally before a referee, testified to acts of adultery committed by the defendant with her. On the 29th of January, 1866, that action was discontinued, and the subject-matter thereof settled without costs to either party, both parties and the attorneys for the plaintiff therein signing a stipulation to that effect. On the trial of this action, the judge found that in consideration that the plaintiff discontinued the action for a divorce without costs, and that she agreed to return to and live with the defendant, he made and delivered the note in suit to Gardner, who was the father of the plaintiff, for her benefit. The judge also found that immediately after such settlement and the giving of said note, the plaintiff returned to defendant's house and lived and cohabited with him until about the 20th of November, 1876, a short time before the commencement of this action, when she left him again, because he charged her on several occasions when they were alone, and once in the presence of one of their servants, with having sexual connection with other men, and amongst others with her own son, by a former husband, who lived with his mother at defendant's house. The plaintiff paid no part of the costs and expenses of the divorce suit. The learned judge dismissed the complaint, holding that the note was void for want of consideration and as being against public policy, and also for want of legal capacity of the parties to make the contract of which the note was a part.

We are of the opinion that neither of those positions can be maintained.

There was ample consideration to support the agreement. *Prima facie* evidence of the defendant's adultery having been produced in the action for divorce, the plaintiff's discontinuance of that action without costs, and her condonation of the offense, furnished a good consideration. Presumptively, the plaintiff was entitled to a judgment of divorce, and was no longer under legal obligation to return to the defendant's house. It is to be assumed, therefore, that her agreement had the effect not only to relieve the defendant from the impending decree which she might have taken against

him, and all the adverse consequences that would have resulted from it, but also to restore to him the society and services of the plaintiff as his wife, the right to which he had forfeited by his misconduct. It is not necessary to look further for a consideration for the defendant's promise. It is difficult to see upon what ground the agreement can be held to be contrary to public policy. Agreements for a future separation are condemned on that ground, but this is the opposite of those. It is an agreement between husband and wife, living in a state of separation, to compose their differences and live together again. To that extent, certainly, it tends to promote the interests of the parties and of the public, and is favored by the law. It is argued by the defendant's counsel that if a husband can bind himself to pay money to his wife in consideration of her condonation of his adultery, a wife can do the same in like case, and that to uphold such contracts would lead to an intolerable condition of domestic life. But what objection can there be to allowing a husband who has been unfaithful to make a settlement upon his wife; or an erring wife, if she has a separate estate, to transfer a reasonable part of it to her husband, as a condition of being forgiven and the former relations being restored? Is it supposed that such an arrangement would carry with it the seeds of future discord between the parties, and for that reason should not be sanctioned by the courts? The same objection might be urged against all those agreements which the law has upheld for centuries, by which a husband, either before or after marriage, settles an annual income upon his wife or creates an estate for her separate use. We think this ground of defense untenable.

We do not understand that the defense of a want of capacity to contract was made at the trial. It appears from the printed case that the defendant's counsel stated to the trial court that he abandoned all defense set up in his answer, except the want of consideration and that the agreement was against public policy, and that he relied solely upon those defenses. That statement was probably overlooked when the decision was signed. But, however that may be, we think the capacity of the parties to make the agreement in question results from the right given by statute to the wife to sue for divorce in her own name. (2 R. S., 144, § 39; Code of Procedure, § 114 · Code of Civil Procedure, § 450.) Having the right

to sue in her own name she may enter into an agreement to settle her suit the same as any other party. (*Kirby* v. *Kirby*, 1 Paige, 565.) And the agreement being one which she had legal capacity to make, we incline to think she may sue upon it at law. But it is not necessary to hold that, for, if remediless at law, she may for that reason maintain the action on the equity side of the court to enforce the performance of her husband's contract. That relief may be granted in the action in its present form, it being consistent with the case made by the complaint and within the issue. (Code of Civil Procedure, § 1207.) It is apparent from the opinion delivered by the learned judge who tried the case that his own impressions were that the action could be maintained, but he decided to dismiss the complaint in deference to the case of *Van Order* v. *Van Order* (8 Hun, 315), which he regarded as an authority in point. We think that case is distinguishable from this. It does not appear that there was any proof of adultery in the action which was settled by the agreement sued on in that case, or that the divorce action could have been maintained. And it is inferable from the report of the case that the agreement was one for a separation, there being a provision that the husband should have the care and custody of the child of the marriage, and that the wife should release her dower; stipulations, which were out of place, if the parties intended to live together. It is true the case states that the wife agreed to "condone" the adultery, but that expression does not necessarily imply that a subsequent cohabitation of the parties was intended (2 R. S., 145, § 42, sub. 2), and, in view of the other facts of the case, it probably means nothing more than that the wife forgave the offense so far as to discontinue her suit upon the terms stated. Viewing the agreement as one for a future permanent separation, without proof of a violation of the marriage contract, the case was well decided, but it differs essentially from the case in hand.

*Philips* v. *Myers* (82 Ill. 67; S. C., Am. Rep., 295) is a case in point, and it accords with what we have said.

The judgment should be reversed and a new trial ordered, costs to abide event.

TALCOTT, P. J., and HARDIN, J., concurred.